IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UTOPIAN WIRELESS CORPORATION, )
)
*Plaintiff*, )
)
v. ) Civil Action No. 3:08CV155
)
CHURCH SCHOOLS IN THE DIOCESE )
   OF VIRGINIA, )
     d/b/a STUART HALL, INC., )
)
SERVE:   David H. Charlton, Registered Agent )
            110 West Franklin Street )
            Richmond, Virginia 23220 )
)
& )
)
BRENDA A. BUCHANAN )
200 Old Back Road )
Raphine, Virginia 24472 )
)
*Defendants*. )
)

## COMPLAINT

Comes now the Plaintiff, Utopian Wireless Corporation ("Utopian"), by and through counsel, and for its Complaint states the following:

### The Parties

1. Plaintiff Utopian is a Delaware corporation with its principal place of business at 7910 Woodmont Avenue, Suite 1400, Bethesda, Maryland.

2. Defendant Church Schools in the Diocese of Virginia, d/b/a Stuart Hall, Inc. and Stuart Hall School, ("Church Schools d/b/a Stuart Hall") is a Virginia corporation with its principal place of business at 6001 Grove Avenue, Richmond, Virginia.

3. Stuart Hall, Inc. was a Virginia private school, incorporated in Virginia, with its principal place of business in Staunton, Virginia. Upon information and belief, in July 2003, Stuart Hall, Inc. merged into Church Schools d/b/a Stuart Hall. Church Schools d/b/a Stuart Hall still transacts business in the Commonwealth of Virginia under the name of Stuart Hall.

4. Defendant Brenda A. Buchanan ("Buchanan") was at times relevant to the subject matter of this litigation the Business Manager of Stuart Hall. Buchanan is a resident of the Commonwealth of Virginia.

## Jurisdiction and Venue

5. The Court has jurisdiction under 28 U.S.C. § 1332. The amount in controversy, exclusive of interests and costs, exceeds the sum or value of $75,000. The citizenship of Utopian is sufficiently diverse from the citizenship of Defendants Church Schools d/b/a Stuart Hall and Buchanan.

6. Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) in that both Defendants reside in the Commonwealth of Virginia, and Defendant Church Schools d/b/a Stuart Hall resides in this judicial district and division.

## Factual Allegations

7. Utopian's business mission is to build wireless networks in smaller markets where consumers are currently underserved by broadband service providers. To achieve its goals, Utopian seeks to lease certain capacities of broadband service channels from entities that are authorized by the Federal Communications Commission ("FCC") to transmit such channels.

8. As part of its mission, Utopian wants to lease and use broadband service channels in the Harrisonburg, Virginia area.

2

9. The FCC has authorized Stuart Hall, Inc. to transmit educational broadband service channels in the Harrisonburg, Virginia area. These channels are called D1, D2, D3 and D4 and have the call sign WNC652 (the "Channels"). The license for the Channels is an exclusive-use license which precludes any other party from using its specific frequencies in its particular geographic area.

10. The Channels have capacity that can be made available for commercial use, pursuant to FCC rules and subject to FCC approval.

11. On or about September 12, 2007, Utopian entered into an Educational Broadband Service Lease Agreement (the "Contract") with Church Schools d/b/a Stuart Hall. A copy of the Contract is attached hereto as Exhibit A.

12. Under the Contract, Church Schools d/b/a Stuart Hall agreed to lease to Utopian all of the commercial capacity of the Channels. (See Ex. A, Background.)

13. Utopian is the lessee of the same frequencies (D1, D2, D3, and D4) in the adjacent Charlottesville market under call sign WLX524. The geographic service areas for the Channels and WLX524 align seamlessly, which enables Utopian to serve the conjoined areas with the same frequencies using the same cellular equipment. There are no spectrum rights equivalent to the Channels that exist for use or acquisition by Utopian.

14. Under the Contract, Church Schools d/b/a Stuart Hall represented and warranted that:

   a. it lawfully held the license to the Channels;

   b. the license to the Channels was in full force and effect;

   c. its operations and activities were conducted in compliance with FCC rules;

d. it had not taken any actions that might compromise the future effectiveness of the license or otherwise have any adverse effect on the license; and

e. no person other than Church Schools d/b/a Stuart Hall had any right, title or interest in or claims to the license to the Channels. (See Ex. A,

15. Under the Contract, Church Schools d/b/a Stuart Hall also agreed to prepare and submit in its own name "all applications, amendments, petitions, requests for waivers, and other documents necessary for the proper operation of" the commercial capacity on the Channels leased by Utopian. (See Ex. A, ¶ 10.1.)

16. Under the Contract, Church Schools d/b/a Stuart Hall also agreed to cooperate with Utopian to prepare and submit any documents necessary to secure any FCC approval required to effectuate the Contract. (See Ex. A, ¶ 10.1.)

17. Under the Contract, Church Schools d/b/a Stuart Hall also agreed that, within 90 days of the execution of the Contract, it would cooperate with Utopian "to fully prepare, file, prosecute and defend the FCC Long Term Lease Application." (See Ex. A, ¶ 10.4.) The FCC Long Term Lease Application is defined in the Contract as "all forms and related exhibits, certifications and other documents necessary to obtain the FCC's consent" to the Contract which satisfy the FCC's regulatory requirements.

18. To notify the FCC and obtain that agency's consent to the Contract, Church Schools d/b/a Stuart Hall was obligated to file, within 90 days of Contract, a Notification of Spectrum Leasing Arrangement ("Notification") with the FCC. A copy of a the Notification that Utopian prepared for Church Schools d/b/a Stuart Hall to file with the FCC is attached hereto as Exhibit B.

4

19. The Contract is for a term of five years, and contains provisions for renewal periods lasting five years, for a maximum duration of thirty years. (See Ex. A., ¶ 2.)

20. In consideration of the Contract, Utopian agreed to pay an initial fee of $20,000, as well as:

   a. a $1,000 monthly fee during the first five-year term of the Contract;

   b. a $1,500 monthly fee during the first five-year renewal period of the Contract; and

   c. a $2,000 monthly fee during any subsequent five-year renewal periods. (See Ex. A, ¶¶ 3.1, 3.2.)

21. The Contract was executed by Brenda A. Buchanan, Business Manager for Church Schools d/b/a Stuart Hall, on behalf of Church Schools d/b/a Stuart Hall. Buchanan executed the Contract with the actual and apparent authority of Church Schools d/b/a Stuart Hall.

22. The 90-day period following execution of the Contract ended on December 11, 2007.

23. As of the date of this Complaint, Church Schools d/b/a Stuart Hall has refused to cooperate with Utopian to prepare and submit any documents necessary to secure the FCC's approval of the Contract and has refused to file the required Notification with the FCC.

24. Utopian has been informed by Church Schools d/b/a Stuart Hall's counsel that Church Schools d/b/a Stuart Hall is refusing to fulfill its obligations under the Contract because it has been in discussions with and has received proposals from another interested third-party lessee for the Channels that contain more substantial economic terms than those contained in the Contract with Utopian, but that it will agree to perform under the Contract if Utopian agrees to increase the lease payments to be paid to Church Schools d/b/a Stuart Hall to equal those being offered by the interested third-party lessee.

25. Under the Contract, Church Schools d/b/a Stuart Hall agreed that it would not contract with any third party to lease, sell, assign, transfer or use any of the commercial capacity of the Channels during the term of the Contract. (See Ex. A, ¶ 4.1.)

26. Under the Contract, Church Schools d/b/a Stuart Hall acknowledged that the license to use the commercial capacity of the Channels was and is unique. (See Ex. A, ¶ 21.2.)

27. Under the Contract, Church Schools d/b/a Stuart Hall acknowledged that Utopian's loss should Defendant fail to perform under the Contract could not easily be measured with damages. (See Ex. A, ¶ 21.2.)

28. The parties agreed that, in the event Church Schools d/b/a Stuart Hall breached the Contract, Utopian would be entitled to injunctive relief and specific performance of the Contract in a court of equity. (See Ex. A, ¶ 21.2.)

## Count I – Specific Performance
### (Against Defendant Church Schools d/b/a Stuart Hall)

29. The allegations contained in paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

30. The Contract entered into between Utopian and Church Schools d/b/a Stuart Hall for the lease of the commercial capacity of the Channels was and is a valid and enforceable contract.

31. Church Schools d/b/a Stuart Hall materially breached the Contract by, *inter alia*, failing to prepare and submit all documents necessary to secure the FCC's approval of the Contract and failing to prepare and submit the required Notification with the FCC.

32. Utopian's business has been injured as a result of Church Schools d/b/a Stuart Hall's material breach of the Contract. There are no spectrum rights equivalent to the Channels that exist for use or acquisition by Utopian.

33. Under the Contract, Church Schools d/b/a Stuart Hall has acknowledged that the license to use the commercial capacity of the Channels was and is unique and that any loss suffered by Utopian as a result of Church Schools d/b/a Stuart Hall's breach could not easily be measured with damages. (See Ex. A, ¶ 21.2.)

34. The parties agreed that, in the event Church Schools d/b/a Stuart Hall breached the Contract, Utopian would be entitled to injunctive relief and specific performance of the Contract in a court of equity. (See Ex. A, ¶ 21.2.)

WHEREFORE, Utopian respectfully requests that the Court command Church Schools d/b/a Stuart Hall to specifically perform its obligations under the Contract by preparing and filing with the FCC all documents necessary to secure the FCC's approval of the Contract, including the form attached hereto as Exhibit B.

### Count II – Injunctive Relief
### (Against Defendant Church Schools d/b/a Stuart Hall)

35. The allegations contained in paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36. Counsel for Church Schools d/b/a Stuart Hall has indicated that Church Schools d/b/a Stuart Hall has been in discussions with and has received proposals from another interested third-party lessee for the Channels that contain more substantial economic terms than those contained in the Contract with Utopian.

37. If Church Schools d/b/a Stuart Hall leases this commercial capacity to a third party, it will be doing so in direct violation of the express provisions of the Contract.

38. Utopian's harm is significant and irreparable if Church Schools d/b/a Stuart Hall is permitted to breach the Contract. The Channels are unique. Utopian cannot purchase equivalent spectrum from the marketplace.

39. By contrast, the potential harm to Church Schools d/b/a Stuart Hall is minimal as Utopian merely seeks to maintain the status of the parties as they agreed to be situated upon execution of the Contract.

40. The parties agreed that, in the event Church Schools d/b/a Stuart Hall breached the Contract, Utopian would be entitled to injunctive relief and specific performance of the Contract in a court of equity. (See Ex. A, ¶ 21.2.)

WHEREFORE, Utopian respectfully requests that the Court:

(a) enjoin Church Schools d/b/a Stuart Hall from entering into any contract with a third party for the sale, lease or use of the commercial capacity of the Channels that it already leased to Utopian for the time period covered by the lease, and from violating ¶¶ 4.1 and 4.2 of the Contract; and

(b) enjoin Church Schools d/b/a Stuart Hall from filing with the FCC a Notification of Spectrum Leasing Arrangement relating to any party other than Utopian.

### Count III – Attorneys' Fees for Breach of Contract
### (Against Defendants Church Schools d/b/a Stuart Hall and Buchanan)

41. The allegations contained in paragraphs 1 through 40 are incorporated by reference as if fully set forth herein.

42. The Contract entered into between Utopian and Church Schools d/b/a Stuart Hall for the lease of the commercial capacity of the Channels was and is a valid and enforceable contract which is binding on both Utopian and Church Schools d/b/a Stuart Hall.

43. Church Schools d/b/a Stuart Hall materially breached the Contract by, *inter alia*, failing to prepare and submit all documents necessary to secure the FCC's approval of the Contract and failing to prepare and submit the required Notification with the FCC.

44. Under the Contract, Church Schools d/b/a Stuart Hall agreed that it would:

8

> defend, indemnify, and hold [Utopian] harmless from and against any and all liabilities, losses, damages, and <u>costs, including reasonable attorney's fees</u>, resulting from, arising out of, or <u>in any way connected with any breach by [Church Schools] of any warranty, representation, agreement, or obligation</u> contained herein.

(See Ex. A, ¶ 19.1.)

45. As a result of Church Schools d/b/a Stuart Hall's breaches of its warranties, representations, agreements and obligations under the Contract, Utopian has incurred costs, including reasonable attorneys' fees.

46. Given the attorneys'-fees provision in the Contract, Utopian is entitled to reimbursement of its costs and fees in litigating this matter.

47. Utopian is entitled to reimbursement of its attorneys' fees and costs from Church Schools d/b/a Stuart Hall, which executed the Contract by and through its agent, Buchanan.

48. In the alternative, in the event Buchanan executed the Contract without actual or apparent authority from Church Schools d/b/a Stuart Hall, Utopian is entitled to reimbursement from Buchanan.

WHEREFORE, Utopian respectfully requests that the Court award Utopian attorneys' fees and costs in an amount to be proven at trial, in addition to awarding such other relief as the Court may deem appropriate.

### Count IV – Constructive Fraud
### (Against Defendant Buchanan)

49. The allegations contained in paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

50. In the alternative, if Buchanan did not execute the Contract with actual and apparent authority of Church Schools d/b/a Stuart Hall, Buchanan committed constructive fraud.

51. Buchanan's false representations of a material fact are as follows:

   a. her misstatement, embodied in the Contract she executed on September 12, 2007, as well as in her other communications, that she had the authority to enter into the Contract on behalf of Stuart Hall, the licensor of the Channels;

   b. her misstatement, embodied in the Contract she executed on September 12, 2007, and delivered to Utopian Vice President Val Geist, that the FCC had authorized Stuart Hall to lease the commercial capacity in the Channels; and

   c. her misstatement, embodied in the Contract she executed on September 12, 2007, and delivered to Utopian Vice President Val Geist, that Stuart Hall would not assign or transfer its rights and/or obligations under the Contract, including its obligations to hold the license to the Channels, without the prior written consent of Utopian. (See Ex. A, ¶ 11.)

52. Buchanan intended Utopian to rely on her misrepresentations.

53. Utopian did, in fact, rely on her misrepresentations and executed the Contract.

54. Utopian has suffered as a result of its reliance on Buchanan's misrepresentations, as the commercial capacity on the Channels is a unique good that cannot be purchased elsewhere.

WHEREFORE, Utopian respectfully requests that the Court enter judgment in favor of Utopian against Buchanan in an amount to be determined at trial but not less than $1,000,000 in addition to awarding such other relief as the Court may deem appropriate

Dated: March 7, 2008

Respectfully submitted,

UTOPIAN WIRELESS CORPORATION

By Counsel:

_____
James H. Rodio (VSB #20139)
Jennifer E. Dure (VSB #48247)
HOLLAND & KNIGHT LLP
1600 Tysons Blvd., Suite 700
McLean, Virginia 22102
703-720-8600
703-720-8610 (facsimile)